UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                            :
ASSEMBLYMAN JAKE BLUMENCRANZ, in his                        :
official capacity as a member of the New York State         :
Assembly,                                                   :
                                                            :
                                                            :              25-cv-1787 (LJL)
                    Plaintiff,                               :
                                                            :              OPINION AND ORDER
           -v-                                               :
                                                            :
GOVERNOR KATHY HOCHUL, in her official capacity :
as Governor of New York, et al.,                            :
                                                            :
                    Defendants.                             :
                                                            :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants the Metropolitan Transportation Authority ("MTA") and Triborough Bridge

and Tunnel Authority ("TBTA," and together with the MTA, the "MTA Defendants,") along

with Governor Kathy Hochul, in her official capacity as the Governor of the State of New York

("Hochul," and together with the MTA Defendants, "Defendants,") move, pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the Amended Complaint of New York

State Assembly member Jake Blumencranz for lack of subject matter jurisdiction and failure to

state a claim for relief.  Dkt. Nos. 27, 29.  For the following reasons, the motion to dismiss is

granted.

## BACKGROUND

Familiarity with proceedings concerning the New York Central Business District Tolling

Program (the "Program") is assumed.  *See Metropolitan Transp. Auth. v. Duffy*, 2026 WL

588117 (S.D.N.Y. Mar. 3, 2026).[1]

---

[1] The prior proceedings are subject to judicial notice.  *See Global Network Commc'n, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

In 2019, the New York State Legislature passed the Traffic Mobility Act, which authorized the TBTA to establish and operate a congestion pricing program in New York City's central business district.  Dkt. No. 21 (the "Amended Complaint" or "AC") ¶¶ 1, 3.  On or around June 2019, the New York State Department of Transportation ("NYSDOT"), the TBTA, and the New York City Department of Transportation ("NYCDOT") sought authority from the federal government to toll vehicles under the statutory Value Pricing Pilot Program ("VPPP").  *Id.* ¶ 4.  The Federal Highway Administration ("FHWA") ultimately executed an agreement pursuant to the VPPP with NYSDOT, NYCDOT, and the TBTA on November 21, 2024.  *Id.* ¶ 9.  The Program was implemented on January 5, 2025.  *Id.* ¶ 10.

On February 19, 2025, United States Secretary of Transportation Sean Duffy ("Duffy") purported to revoke federal approval for the congestion pricing program.  *Id.* ¶ 16; *see* Dkt. No. 21-1.  That same day, Governor Hochul stated that the Program would remain operational.  AC ¶ 106.  On February 20, 2025, Gloria M. Shepard, the Executive Director of the FHWA, issued a letter to the NYSDOT, NYCDOT, and MTA directing the agencies to comply with Secretary Duffy's revocation.  *Id.* ¶¶ 107–08; *see* Dkt. No. 21-3.  Secretary Duffy ultimately provided an additional thirty days for the state agencies to terminate the program.  AC ¶ 112.  The federal government then provided a new deadline of April 20, 2025, for compliance.  *Id.* ¶ 117.

On April 21, 2025, Secretary Duffy wrote Governor Hochul to warn her that New York faced "serious consequences" for noncompliance and directed New York to show cause why the FHWA should not impose compliance measures.  *Id.* ¶ 119; *see* Dkt. No. 21-4.  He reiterated that the agreement under the VPPP was terminated as of his initial February 19, 2025 letter.  *Id.* ¶ 121.  He also outlined the enforcement steps that the federal government would take if noncompliance continued past May 28, 2025, including no further advance construction

authorizations for projects in Manhattan, no further National Environmental Policy Act ("NEPA") approvals for projects in Manhattan, and no further approvals for Statewide Transportation Improvement Program Amendments. *Id.* ¶ 123.

Blumencranz is an elected member of the New York State Assembly. *Id.* ¶ 44. He filed this lawsuit on March 3, 2025, alleging that the Program was both unlawful and ineffective. *Id.* ¶¶ 27–36. He alleges that the program's continued implementation despite Secretary Duffy's revocation FHWA approval violates the Supremacy Clause of the U.S. Constitution, the New York State Administrative Procedure Act, and 42 U.S.C. § 1983. *Id.* ¶¶ 37–39, 137–69. Plaintiff seeks declaratory and injunctive relief, including the appointment of a federal monitor to ensure compliance with any relief ordered. *Id.* ¶¶ 170–80.

By the time Assemblyman Blumencranz filed this lawsuit, lawsuits had already been filed before this Court challenging the Program by residents of the central business district, *see Chan v. U.S. Dep't of Transp.*, 23-cv-10365 (S.D.N.Y. filed November 11, 2023); the Trucking Association of New York, *see Trucking Ass'n of N.Y. v. MTA*, 24-cv-4111 (S.D.N.Y. filed May 30, 2024); elected officials, civic leaders, unions, and advocacy organizations, *see Mulgrew v. U.S. Dep't of Transp.*, 24-cv-1644 (S.D.N.Y. filed Jan. 4, 2024); and the New Yorkers Against Congestion Pricing Tax, *see New Yorkers Against Congestion Pricing Tax v. U.S. Dep't of Transp.*, 24-cv-367 (S.D.N.Y. filed Jan. 18, 2024). Similar lawsuits had been filed by the County of Rockland and the County Executive of Orange County. *See County of Rockland v. TBTA*, 24-cv-2285 (S.D.N.Y. filed Mar. 26, 2024); *Neuhaus v. TBTA*, 24-cv-3983 (S.D.N.Y. filed May 23, 2024). In addition, the MTA filed a lawsuit challenging Secretary Duffy's purported termination of the program. *See MTA v. Duffy*, 25-cv-1413 (S.D.N.Y. filed Feb. 19, 2025).

3

All of the cases challenging the Program have since been dismissed. *See Chan v. U.S. Dep't of Transp.*, 782 F. Supp. 3d 39 (S.D.N.Y. 2025); *County of Rockland v. TBTA*, 791 F. Supp. 3d 433 (S.D.N.Y. 2025); *Trucking Ass'n of N.Y. v. MTA*, 2026 WL 672986 (S.D.N.Y. Mar. 10, 2026). The Second Circuit has affirmed Judge Siebel's dismissal of the lawsuit before her. *County of Rockland v. TBTA*, 2026 WL 2014952 (2d Cir. July 13, 2026). This Court has vacated Secretary Duffy's February 19 letter purporting to terminate the agreement under the VPPP authorizing the Program. *Duffy*, 2026 WL 588117, at *65. As a result, the "VPPP Agreement [was] restored" and the FHWA's approval "[was] reinstated." *Id*

## PROCEDURAL HISTORY

This proceeding was initiated by Complaint on March 3, 2025. Dkt. No. 1. Plaintiff filed his Amended Complaint on April 21, 2025. The MTA Defendants and Governor Hochul filed their Motions to Dismiss and accompanying memoranda of law on March 24, 2026. Dkt. Nos. 27–30. Plaintiff has not opposed the motions.

## LEGAL STANDARD

A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A bare assertion of standing alone will not do. Although injury may be pleaded generally, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), the plaintiff must still allege "facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue," *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).

4

On a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002). This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). The ultimate question is whether a "claim has facial plausibility," which is established where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556; see *Mattrixx Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

Although the motions to dismiss are unopposed, the Court must nevertheless "review the merits of the motion and determine whether the movant has carried its burden." *Foster v. Phillips*, 2005 WL 2978686, at *3); *see also McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."). In addition, the Court has an

independent obligation to examine its own subject matter jurisdiction. *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361 (2d Cir. 2000).

## DISCUSSION

Defendant argues that the Amended Complaint must be dismissed because Plaintiff lacks standing to sue, because there is no private right of action to enforce 23 U.S.C. § 301, and because his claims are moot and otherwise fail on the merits. Because "[i]t is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue," *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990), the Court first addresses Plaintiff's standing.

To adequately allege Article III standing, a plaintiff must establish "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019). Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Defendants argue that Plaintiff's Amended Complaint fails the first prong, as he has not alleged that he paid any (allegedly) illegal tolls. Plaintiff complains of Defendants' continued operation of the Program after the Secretary Duffy revoked the approval required for it under the VPPP. AC ¶¶ 144–46, 160, 169. He seeks declaratory relief that "Defendants' continued enforcement of the congestion pricing toll, despite the revocation of federal approval, is . . . in violation of Plaintiff Assemblyman Jake Blumencranz, his constituents, and all drivers' rights." *Id.* at 30. In addition, Plaintiff seeks damages in the form of "tolls unlawfully collected since the revocation of federal authorization." *Id.* at 31.

Plaintiff does not allege that he was ever charged one of the tolls that he alleges were illegal. He alleges that he was charged a toll on only one instance on February 23, 2025. AC ¶ 98. At that time, Secretary Duffy had issued his initial February 19 letter in which he concluded that "the scope of this pilot project as approved exceeds the authority authorized by Congress under the VPPP." Dkt. No. 21-1. However, Gloria Shepard clarified the next day that the "rescission of approval and termination" of the authority to operate the toll Program "will be effective on March 21, 2025." Dkt. No. 21-3. That is, "NYSDOT and its project sponsors" were granted "time to terminate operations of this pilot in an orderly manner" and to comply with Secretary Duffy's directive and did not need to "Cease the collection of tolls" before March 21, 2025. *Id.* He thus does not allege that the toll he assessed was one that the Secretary's letter prevented Defendants from imposing. Plaintiff does not otherwise plead that he regularly travels or commutes into the zone covered by the Program.

Plaintiff thus has not alleged any injury to himself, much less one that is "particularized" and not "conjectural or hypothetical." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995); *see Harty v. West Pt. Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (particularized injuries must "affect the plaintiff in a personal and individual way." (quoting *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 340 (2016))). His allegations of illegality are predicated on the Secretary's revocation of authority to operate the Program. However, he has alleged only that he paid a toll at a moment in time when the federal government's purported revocation of approval was not yet effective.

Nor can Plaintiff allege standing based on the generalized harm that he asserts for New York and New Jersey drivers. Litigants are, as a general matter, not able to assert "the rights or legal interests of others in order to obtain relief from injury to themselves." *Keepers, Inc. v. City*

*of Milford*, 807 F.3d 24, 40 (2d Cir. 2015).  Although there are "circumstances where it is necessary to grant third party standing in order to assert the rights of another," *Kowalski v. Tesmer*, 534 U.S. 125, 129–30 (2004), such circumstance exist only where the plaintiff establishes "among other things, '(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests.'"  *Gelb v. Niblack*, 2025 WL 1502015, at *1 (2d Cir. May 27, 2025) (summary order) (quoting *Keepers, Inc.*, 807 F.3d at 41).  Others who were affected by the Program have not lacked the ability to protect their own interests.  They have sued.  Plaintiff has identified no barrier, and the record reflects that there is none, for those who were impacted by the Program to assert their own interests.[2]

Absent standing, the Court has no authority to adjudicate Plaintiff's claims, and they must be dismissed for lack of jurisdiction.  *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona, NY*, 945 F.3d 83, 109 (2d Cir. 2019) ("A federal court's authority to adjudicate depends on whether the plaintiff has standing to pursue its claims.").

Even if Plaintiff were able to allege standing, his federal claims would fail because they are moot and Plaintiff does not identify a cognizable cause of action.  Plaintiff brings two federal causes of action.  First, Plaintiff alleges that "[b]ecause New York's congestion pricing program directly contradicts a federal determination and operates in defiance of express statutory provisions, it is unconstitutional under the Supremacy Clause."  AC ¶ 149.  Hie claim is

---

[2] Nor has Plaintiff identified any reason why his role as a state assemblyman would have any impact on the Court's standing analysis.  The Supreme Court has recognized that "state legislators have standing to contest a decision holding a state statute unconstitutional if state law authorizes legislators to represent the State's interests," which is clearly inapposite here. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997); *see Kaplan v. County of Sullivan*, 74 F.3d 398, 400 (2d Cir. 1996) (a plaintiff "who has suffered no distinct injury to the effectiveness of his vote" does not have standing "merely because of his position as an elected official.").

premised on the fact that "the United States Secretary of Transportation formally revoked prior approval for New York City's congestion pricing program," and on the contention that therefore "any attempt by the State to continue enforcing congestion pricing amounts to a direct violation of federal law." *Id.* ¶ 144–46.  Second, Plaintiff alleges a claim under 42 U.S.C. § 1983 premised on the fact that "the absence of federal approval renders the tolls unauthorized, making their collection a constitutional violation." *Id.* ¶ 169.[3]  T

Both claims are moot following this Court's prior Opinion in *Duffy*.  In *Duffy*, the Court granted summary judgment to the same parties that are the MTA Defendants here after finding that Secretary Duffy's actions rescinding the Program agreement under the VPPP were arbitrary and capricious.  *Duffy*, 2026 WL 588117, at *65.  The Court continued that:

> Accordingly, his actions purporting to terminate that agreement, including the February 19 Letter and the April 21 Letter, are vacated.  The VPPP Agreement is restored and the FHWA approval of the CBDTP pilot project is reinstated. Plaintiffs are thereby relieved of the obligation to cease tolling operations. Plaintiffs are restored to their position prior to the issuance of the February 19 Letter.

*Id.*  The Court additionally granted the plaintiffs' request for declaratory judgment that "the Secretary is permitted to terminate the VPPP Agreement only pursuant to the terms expressly stated therein, that the Defendants' termination of the VPPP Agreement was unlawful, and that any attempt to enforce the February 19 Letter or April 21 Letter would be unlawful." *Id.* at *66.

Both of Plaintiff's federal causes of action, then, are premised on executive action that the Court has vacated.  That the program continued operating in the face of Secretary Duffy's purported termination is the basis for both Plaintiff's Supremacy Clause claim and his Section

---

[3] Plaintiff also includes as "Count 4" his request for declaratory and injunctive relief.  *Id.* ¶¶ 170–80.  Those allegations pertain only the relief requested, and are not a fourth cause of action.  *See Mulgrew v. U.S. Dep't of Transp.*, 750 F. Supp. 3d 171, 210 (S.D.N.Y. 2024) ("Declaratory judgments and injunctions are remedies, not causes of action." (quoting *Mantrique v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 5745717, at *8 (S.D.N.Y. Dec. 2, 2021))).

1983 claim.  That termination was vacated.  Plaintiff thus need not worry that Defendants are operating in violation of Secretary Duffy's letter because the Court has already addressed the source of Plaintiff's concern—Secretary Duffy's letter—such that he no longer needs the Court's assistance.  That is 'the hallmark of a moot case or controversy.'"  *Town of Newburgh v. Newburgh EOM LLC*, 151 F.4th 96, 101–02 (2d Cir. 2025) (quoting *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983)); *see Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001) ("The requisite dispute must persist through the litigation . . . and if the dispute should dissolve at any time due to a change in circumstances, the case becomes moot.").[4]

Second, there is no private right of action through which Plaintiff can enforce the alleged violations of 23 U.S.C. § 301.  As Plaintiff alleges, "[u]nder 23 U.S.C. § 301, all highways constructed or maintained with federal funds must be free from tolls unless Congress has provided an explicit exception."  AC ¶ 142.  "The statute further mandates that tolling may be permitted only in narrow circumstances and only with express authorization from the FHWA or the United States Secretary of Transportation."  *Id.*  Plaintiff bases his argument that operation of the Program is unlawful on this statute.  *Id.* ¶ 149, 164 ("The MTA and NYSDOT's continued

---

[4] There are two well-recognized exceptions to mootness, neither of which are applicable here. First, the "capable of repetition, yet evading review" exception applies only where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Abadi v. Am. Airlines*, 2024 WL 3849188, at *5 (S.D.N.Y. Aug. 16, 2024) (internal citation omitted).  Second, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.* (quoting *MHANY Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016)).  This action is neither capable of repetition yet evading review, nor is mootness premised on a voluntary action of the Defendants; it is moot based on a disappearance of the very case or controversy that forms the basis of the Amended Complaint.

imposition of congestion pricing tolls constitutes a deprivation of federally protected rights because it contravenes the statutory protections of 23 U.S.C. § 301.").

Although Plaintiff provides the basis pursuant to which he believed the Defendants' actions to be unlawful, he may sue only where Congress has created a "private right of action to enforce federal law." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Such a right exists only where the statutory language "unambiguously confers an enforceable right upon an identifiable class of beneficiaries." *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 783 (2d Cir. 2002) (internal citation omitted). Plaintiff does not allege, nor could he, that Section 301 provides him a private right of action. The relevant provision reads, in relevant part, that

> [e]xcept as provided in section 129 of this title with respect to certain toll bridges and toll tunnels, all highways constructed under the provisions of this title shall be free from tolls of all kinds.

23 U.S.C. § 301. It is clear that provision does not, by its terms, authorize private lawsuits—it contains no language authorizing a plaintiff to sue to enforce its terms. Nor does Plaintiff illuminate any other basis within Title 23 that would do so.

Nor can a private right of action be implied. The key inquiry is whether the statute is "phrased in terms of the persons benefited" "with an *unmistakable focus* on the benefited class." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (emphasis in original). Courts will find an implied cause of action only where the "statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Id.* (quoting *Sandoval*, 532 U.S. at 286) (emphasis in original). "Implied rights of action are disfavored, and will not be found in the absence of clear evidence of legislative intent." *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020) (quoting *Prousalis v. Moore*, 751 F.3d 272, 278 (4th Cir. 2014)).

Section 301 evinces no such intent. It contains no language focused on individual rights; "the statute is worded in the language of governmental policy and practice, not the entitlements

11

of motorists who use toll bridges." *Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 63 (1st Cir. 2016). It does not "concern[] whether the needs of any particular person have been satisfied." *Gonzaga*, 536 U.S. at 288; *contra Oxford Univ. Bank v. Lansuppe Feeder, LLC*, 933 F.3d 99, 105 (2d Cir. 2019) (finding an implied right of action where the text "unambiguously evince[d] Congressional intent to authorize a private action."). Additionally, that Congress granted the FHWA enforcement authority through its "discretion to approve federal funds" "plainly exhibits Congress's preference for public enforcement." *Town of Portsmouth*, 813 F.3d at 63; *see Cnty. of Westchester v. New York*, 286 F.3d 150, 153 (2d Cir. 2002) ("The fact that Congress delegated regulatory and enforcement authority to" the agency "also weights heavily against implying a private right of action.").

Plaintiff does not present any other avenue through which he can, as an individual, enforce the provisions of Section 301. Plaintiff first invokes the Supremacy Clause, which states that the "Constitution, and the Laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land . . . any thing in the constitution or laws of any state to the contrary notwithstanding." Const. Art. VI. The Supreme Court has recently reiterated that the clause "is not the 'source of any federal rights' and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015) (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 (1989)). "It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.* It cannot serve as a basis upon which Plaintiff may enforce a private remedy in federal court.

Plaintiff also seeks a remedy pursuant to 42 U.S.C. § 1983, which states that "[e]very person who . . . subjects . . . any citizen of the United States . . . to the deprivation of rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." Although a plaintiff "suing under § 1983 do[es] not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes," they must nevertheless "demonstrate[] that a statute confers an individual right." *Gonzaga*, 536 U.S. at 285. Section 1983 "merely provides a mechanism for enforcing individual rights secured elsewhere, *i.e.*, rights independently secured by the Constitution and laws of the United States." *Id.* (internal quotation marks omitted). In that sense, the inquiry "should . . . not differ from" that in "discerning whether personal rights exist in the implied right of action context." *Id.* There is no right that Plaintiff has "secured" that he can enforce pursuant to Section 1983. *See Town of Portsmouth*, 813 F.3d at 62 n.5 (section 1983 "involves remedies, not rights," and depends "upon the existence of an enforceable right in the first instance, which does not exist here.").[5]

The Court grants Defendants' motion to dismiss with prejudice to repleading. Plaintiff has failed to allege either Article III standing or a valid private right of action, such that leave to amend would be futile. *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (summary order) ("Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim."). Moreover, Plaintiffs do not seek leave for further amendment; they have not responded to Defendants' motion to dismiss at all. Even if it had, "an amendment is not warranted absent

---

[5] As Defendants point out, the Ninth Circuit held that Section 301 is enforceable through Section 1983 in *Clallam Cty. v. Dep't of Transp.*, 849 F.2d 424, 427–29 (9th Cir. 1988). But "its holding appears to have been abrogated by the Supreme Court's decision in *Gonzaga*." *Town of Portsmouth*, 813 F.3d at 63 n.6.

some indication as to what [a plaintiff] might add to [its] complaint in order to make it viable."

*Shemian v. Research in Motion Ltd.*, 570 F. App'x 32, 37 (2d Cir. 2014) (summary order)

(quoting *Horoshko v. Citibank*, 373 F.3d 248, 249 (2d Cir. 2004)).  In the absence of any such

indication here, dismissal with prejudice is warranted.  *See Khalil v. Trustees of Columbia Univ.*

*in City of N.Y.*, 2026 WL 775813, at *17 (S.D.N.Y. Mar. 19, 2026) (granting motion to dismiss

with prejudice where the plaintiffs "haven't suggested that they could address these pleading

deficiencies in a proposed amended complaint.").[6]

## CONCLUSION

The motion to dismiss is GRANTED with prejudice to repleading.  The Clerk of Court is

respectfully directed to close Dkt. Nos. 27 and 29, and to close the case.


SO ORDERED.


Dated: July 14, 2026
        New York, New York                                  LEWIS J. LIMAN
                                                      United States District Judge

---

[6] Having dismissed all of Plaintiff's federal causes of action, the Court has no basis on which it could exercise supplemental jurisdiction and, in any event, it would decline to exercise supplemental jurisdiction over his New York State SAPA claim.  "[I]f a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'"  *Brzak v. United Nations*, 597 F.3d 107, 114 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)).  In any event, Plaintiff has not alleged that the TBTA failed to comply with SAPA's procedural requirements when promulgating toll rates.  This Court has previously held that the TBTA's actions were compliant with SAPA.  *See Chan v. U.S. Dep't of Transp.*, 782 F. Supp. 3d 39, 64 (S.D.N.Y. 2025) (citing *Chan v. U.S. Dep't of Transp.*, 2024 WL 5199945, at *27–42 (S.D.N.Y. Dec. 23, 2024)).